57 CCPA

**Application of Theodor PETRZILKA, Albert Hofmann, Hansruedi Schenk, Franz Troxler, Albert Frey and Hans Ott.**

**Patent Appeal No. 8246.**

United States Court of Customs and Patent Appeals.

April 23, 1970.

Irwin M. Aisenberg, Washington, D. C., attorney of record, for appellants.

Joseph Schimmel, Washington, D. C., for the Commissioner of Patents. Leroy B. Randall, Raymond E. Martin, Washington, D. C., of counsel.

Before RICH, Acting Chief Judge, ALMOND, BALDWIN and LANE, Judges, and McMANUS, Chief Judge, Northern District of Iowa, sitting by designation.

RICH, Acting Chief Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the rejection of claim 5 of application serial No. 329,972, filed December 12, 1963, entitled "Therapeutically Active 10–Methoxy–Deserpidine," a continuation-in-part of application serial No.

728,112, filed April 14, 1958. We reverse.

Claim 5, the only claim remaining in the application, reads:

Laevorotatory [1] 10–methoxy–deserpidine. This single chemical compound (hereinafter "10–MD"), has the following structural formula:

[A1622]

This compound is a blood-pressure-reducing agent or "hypotensive" agent.

The appealed claim is rejected under 35 U.S.C. § 103 as unpatentable over either of the following United States patents:

| | | |
|---|---|---|
| Kuehne | 2,857,385 | Oct. 21, 1958 |
| | | (Filed Apr. 17, 1956) |
| Woodward | 2,883,384 | Apr. 21, 1959 |
| | | (Filed May 3, 1956) |

These references are cited as disclosing "reserpine" ("11–methoxy–deserpidine") and related compounds, processes for preparing the same, and processes for resolving mixtures of the laevorotatory and dextrorotatory isomers thereof. The *structure* of laevorotatory reserpine differs from that of appellants' compound in only one seemingly minor respect: with reference to the structural formula of appellants' compound, supra, laevorotatory reserpine has a methoxy or "H₃CO–" group in the 11–position rather than the 10–position. The generic disclosures of Kuehne and Woodward are broad enough to emcompass appellants' compound. The Patent Office, however, does not contend that appellants' compound is disclosed in the sense of 35 U.S.C. § 102.

Appellants' principal contentions are: (1) that the Patent Office has not made out even a prima facie case of obvious-

1. Also spelled "laevorotary," "levorotatory," and "levorotary," and defined by The American Heritage Dictionary of the English Language (1969) as follows:

  1. *Optics.* Turning or rotating the plane of polarization of light to the left or counterclockwise.

2. *Chemistry.* Of or pertaining to a solution that so rotates the plane of polarized light.

  "Dextrorotatory" pertains to rotation of the plane of polarization of light to the right.

ness; and (2) assuming that a prima facie case of obviousness has been made out, that appellants' have shown that their compound possesses such unexpected properties in comparison to reserpine as to rebut obviousness under the statute. Inasmuch as we agree with appellants' second contention, we need not consider the first.

The record clearly establishes that reserpine, a well known, naturally occurring compound, possesses substantial hypotensive activity. It also appears, however, that reserpine has a very substantial degree of central depressant and convulsant activity, so much, in fact, that depression caused by the drug has led to suicide attempts and that administration is essentially limited to hospitalized patients. According to appellants, the claimed 10–MD, on the other hand, "possesses practically only the hypotensive properties" of reserpine. It is not disputed that neither of the cited references suggests how the reserpine structure might be modified to reduce or eliminate its depressant activity. What is in dispute is whether 10–MD possesses properties as different from those of reserpine as appellants contend.

In order to prove that their compound does have such unexpected properties, appellants have submitted eight affidavits and have made of record what the board termed "scores of publications" reporting clinical evaluations of 10–MD.[2]

The board summed up its evaluation of the publications as follows:

Insofar as the published material is concerned, it can only be described as "mixed". Much of it, particularly the promotional literature and some investigations apparently undertaken at the behest, under the auspices, or with the assistance of the manufacturer, is glowing in its praise of the product. Other reports are considerably more cautious, and a few frankly comment on adverse reactions. The difficulty in evaluating all this material resides in the nature of the symptoms, the patients, and the course of treatment. There is a subjective aspect to sedative and depressive effects, and the results may be colored by foreknowledge, derived from promotional literature or previous reports, that sedative and depressive effects are absent. The previous medical history of the patient is also an important factor, as is the dosage administered and the duration of the medication.

Appellants' summation was as follows:

Of almost 1500 patients involved in reported clinical investigations, side effects were noted in only about 10% * * * including depression in at most 2.68%. This is regarded as a virtual elimination of depression; other side effects, except for sedation,[3] are not in issue.

The board concluded by saying:

The overall picture, as we see it, is merely another hypotensive agent, closely related to reserpine (position isomer), with a spectrum of properties and activities which does not differ strikingly from reserpine. Thus, it is less potent, requiring a considerably higher dosage for hypotensive effect, and, at the best, it may have a somewhat reduced sedative and depressive effect. Considering all factors: the close structural similarity, the generally similar properties, the same use, and the inconclusive showing of markedly different activity, we have come to the conclusion that the rejection of the appealed claim on the cited art must be sustained.

2. A number of these publications are merely excerpted. We have not attempted an accurate count of the publications referred to in the record; appellants' brief, however, summarizes thirty, including the eight which the board considered adverse in some way to appellants' position.

3. These other side effects reported included nasal stuffiness, drowsiness, and fatigue.

We reverse the decision of the board because we are of the opinion that the totality of the *evidence of record* can reasonably lead only to the conclusion that 10–MD *does* possess properties which "differ strikingly from reserpine." It is true that a number of 10–MD related cases of depression and other side effects have been reported.[4] For example, the promotional literature of a marketer of 10–MD includes the following:

PRECAUTION

*Depression*

Of recent years some cases of depression have been reported with [10–MD]. In the majority a past history of personality disturbances was present. [10–MD] therefore should not be administered to patients with endogenous depression or depressive personality tendencies. Patients should be reviewed periodically in order to detect early personality changes should these occur.

It is equally clear, however, that 10–MD possesses far less depressant activity than does reserpine, that it is, consequently, far superior to reserpine for the treatment of hypertension, and that there is nothing in the art of record to suggest that such would be the case.

To reach the board's conclusion, i. e., that the properties of 10–MD do not differ strikingly from those of reserpine, would require, we think, that all evidence favorable to appellants' position be viewed with limitless skepticism and that all evidence unfavorable to appellants' position be accepted with limitless faith.

Accordingly, the decision of the board is reversed.

Reversed.

4. Pertinent to this, is the following statement from appellants' brief:
   Were penicillin subjected to any absolute test in the light of deaths result-

ing from its use, society may well have been precluded from having this wonder drug available.